IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JULIET BLACKSHER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 2:11-CV-1240-RDP |
| } | |
| **CITY OF IRONDALE, ALABAMA, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. # 10), filed May 9, 2011. The Motion has been fully briefed. (Docs. # 11, 12, 14, 17 and 18).

**I.      Background**

Plaintiff claims that on September 21, 2010, she was arrested by Defendant Hill in the City of Birmingham solely because she tried to photograph his treatment of a citizen on a Birmingham street. Plaintiff's camera was taken by Defendant Hill and, after her arrest, she was transported to the Irondale City Jail, detained there for several hours, and released without the filing of any charges. At Defendant Hill's direction, her car was towed from Birmingham to Trussville, Alabama. (Doc. # 19).

This case was originally filed on March 10, 2011, in the Circuit for Jefferson County, Alabama. (Doc. # 1). The original Complaint contained the following claims:

1.      Count I - Assault and Battery against Defendant Hill;

2.      Count II - False Imprisonment against both Defendants;

3.      Count III - Conversion against both Defendants;

    4.       Count IV - Wantonness against Defendant Hill;

    5.       Count V - Unlawful Arrest Under the Fourth Amendment against Defendant Hill;

    6.       Count VI - Unlawful Detention Under the Fourteenth Amendment against both Defendants; and

    7.       Count VII - Excessive Force Under the Fourteenth Amendment against Defendant Hill.

(Doc # 1).

On April 12, 2011, Defendants removed the case to this court because the Complaint asserted certain claims arising under federal law. (Doc. # 1). On April 19, 2011, Defendants moved to dismiss Plaintiff's Complaint. (Doc. # 3). Defendants' Motion to Dismiss argued that Plaintiff's Complaint was due to be dismissed because (1) it failed to state a claim, (2) it was based on conclusory allegations and, thus, failed to meet the required pleading standard under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), and (3) Plaintiff's claims were barred by various immunity doctrines. (Doc. # 3).

Apparently in response to Defendants' Motion to Dismiss, Plaintiff filed a First Amended Complaint for Damages. (Doc. # 8). Plaintiff's First Amended Complaint contains the following Counts:

    1.       Count I - Assault and Battery against Defendant Hill;

    2.       Count II - False Imprisonment /Negligent Detention against both Defendants;

    3.       Count III - Conversion/Negligent Retention of Property against both Defendants;

    4.       Count IV - Wantonness against Defendant Hill;

    5.       Count V - Unlawful Arrest Under the Fourth Amendment against both Defendants;

    6.    Count VI - Unlawful Detention Under the Fourteenth Amendment against both Defendants;

    7.    Count VII - Excessive Force Under the Fourteenth Amendment against Defendant Hill; and

    8.    Count VIII - Taking of Property Without Just Compensation and Due Process of Law Under the Fifth and Fourteenth Amendments against both Defendants.

(Doc. # 8).

On May 9, 2011, Defendants moved to dismiss Plaintiff's First Amended Complaint. (Doc. # 10).

On May 16, 2011, Plaintiff filed a response to Defendants' Motion, and also filed a Notice of Withdrawal of Count VII and Count VIII's Due Process Claim (Docs. # 14 and 15). On May 17, 2011, the court dismissed without prejudice Count VII and that portion of Count VIII alleging a taking of property without due process of law. (Doc. # 16).

Defendants seek dismissal of all claims in Plaintiff's First Amended Complaint. They again argue that Plaintiff failed to meet the required pleading standard under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), and that the claims are barred by various immunity doctrines. (Doc. # 10).

## II.   Discussion

### A.   State Law Claims

In their Motion to Dismiss, Defendants argue that they are entitled to state agent immunity on Plaintiff's state law claims. However, the Alabama Supreme Court has stated that the summary judgment stage, not the motion to dismiss stage, is the preferred stage for resolution of qualified immunity issues. *Phillips v. Thomas*, 555 So.2d 81, 84 (Ala. 1989). Based upon the court's review

of the allegations of Plaintiff's Amended Complaint, it is conceivable that plaintiffs could prove a set of facts under which she might prevail on these claims. Therefore, to the extent that Defendants' Motion to Dismiss seeks dismissal of Plaintiff's state law claims, it is due to be denied in part as premature.

**III.     Plaintiff's Federal Claims**

Whether Plaintiff's federal law claims can or should be resolved at this stage is a different question. Defendants seeks dismissal of Plaintiff's federal claims on the basis that they fail to state a claim. That is, Defendants attacks the legal sufficiency of Counts V and VI of the First Amended Complaint.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard

is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegations." *Iqbal*, 129 S. Ct. at 1950. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Thus, under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assumes their veracity, and then proceed, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims must be dismissed. *Id.*

    A.    <u>**The City's Motion to Dismiss**</u>

"[T]o sustain a 1983 action, a plaintiff must make a prima facie showing that the act or omission of a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Cannon v. Taylor*, 782 F.2d 947, 949 (11th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "Although the Supreme Court has held that counties (and other local government entities) are 'persons' within the scope of § 1983, and subject to liability, [Plaintiff] cannot rely upon the theory of respondeat

superior to hold [a government entity] liable." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).

"'It is only when the "execution of the government's policy or custom inflicts the injury" that the municipality may be held liable.'" *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "A [city] does not incur § 1983 liability for injuries caused solely by its employees." *Id.* (citing *Monell*, 436 U.S. at 694). "Nor does the fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability." *Id.* (citing *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* (citing *Canton*, 489 U.S. at 388).

In her First Amended Complaint, Plaintiff added certain allegations relating to her federal claims that were not present in her original complaint. However, even the addition of those allegations does not save Plaintiff's federal claims here. Although, in considering a motion to dismiss, courts must generally accept the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004).

The question presently before the court is whether the bald allegations added to the Amended Complaint (*e.g.,* that Defendant Hill is a policymaker for the City, that the City failed to train its officers regarding certain matters, or that the City had a policy or custom of depriving citizens of property without due process of law) are sufficient to pass muster under applicable pleading

standards. Notably, there is no factual detail contained in the First Amended Complaint to support these "legal conclusions masquerading as facts." *Jackson*, 372 F.3d at 1263. Plaintiff's First Amended Complaint simply does not allege sufficient "factual content that allows the court to draw the reasonable inference" that the City of Irondale is liable for any misconduct under § 1983. *Iqbal*, 129 S.Ct. at 1949. In sum, Plaintiff's conclusion that either Defendant is liable under § 1983 is "not supported by factual allegations." *Nettles v. City of Leesburg--Police Dept.*, 2010 WL 5382914, * 6 (11th Cir. 2010). Therefore, the City's Motion to Dismiss Plaintiff's federal claims is due to be granted.

   **B.** **Defendant Hill's Motion to Dismiss**

Plaintiff's federal clams are asserted against Defendant Hill in his individual capacity as well as his official capacity. (Doc. # 8 at ¶8). Where an officer is sued under § 1983 in his official capacity, the suit is actually a proceeding against the municipality the officer represents. *Abusaid v. Hillsborough County Bd. of County Com'rs*, 405 F.3d 1298, 1302 n. 3 (11th Cir. 2005). Therefore, the official capacity claims are due to be dismissed for the reasons discussed above.

Defendant Hill asserts that Plaintiff's claims against him in his individual capacity are due to be dismissed on qualified immunity grounds. (Doc. # 12). "Qualified immunity is an immunity from suit rather than a mere defense from liability." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields

government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994). "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991). If Defendant Hill can establish that he is entitled to qualified immunity, then the federal claims asserted against him in his individual capacity must be dismissed. *See Randall*, 610 F.3d at 714.

A court determines whether a defendant is entitled to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that he was acting within his discretionary authority. *Id.* Next, the burden shifts to the plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Id.* at 1136-37 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.* at 1137. Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can clearly establish the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003). To establish that the violation was "clearly established," the plaintiff must demonstrate that the facts surrounding the alleged violation in this case are "materially similar" to the facts of a preexisting case such that the alleged violation in this case was clearly established as a constitutional violation at the time of the incident. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-1033 (11th Cir. 2001). "Because fair and clear notice to government officials is the cornerstone of qualified immunity, courts must diligently analyze the preexisting case law to determine whether it really did provide plain notice to every reasonable government official that the pertinent conduct, in the specific circumstances, would clearly violate preexisting federal law." *Id.* at 1031.

### 1. **Defendant Hill was acting within the scope of his discretionary authority.**

The facts alleged in the First Amended Complaint show that Defendant Hill was on duty and in the course of an ancillary arrest at the time of Plaintiff's arrest. (Doc. # 8 at p.1 ("Hill arrested Plaintiff ... for attempting to photograph his ... custodial treatment of another citizen... ."); Doc. 14 at 18, n.4 ("the ancillary arrest in this case... .")). The First Amended Complaint further alleges that "[Plaintiff] watched as a vehicle pulled to the side on Clairmont Avenue, stopped, and another vehicle pulled up behind the first. The occupants of both cars were dressed in plain-clothes. ... One of the occupants of the second car proceeded to the passenger side of the first car where he pulled out the ... passenger and began to drag him... . Plaintiff retrieved her camera from her car and raised it to take a photograph ... . The man (later identified as Defendant Jason Hill) ... came up to Plaintiff and told her to move away from the scene. Plaintiff ... moved back toward the office of the service station. After moving away from the scene, Plaintiff again lifted her camera to take a photograph. Defendant Hill then took her camera from her. ... He ... handcuffed and arrested her." (Doc. # 8 at ¶ 6).

Without question, Defendant Hill was acting within the scope of his discretionary authority when he arrested Plaintiff. "A government official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Sims v. Metro. Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992) (internal citations and quotation marks omitted). Looking objectively at the circumstances described in the First Amended Complaint, it is apparent that Defendant Hill's arrest of Plaintiff was undertaken pursuant to his official duties related to the prior arrest. Defendant Hill asserts that he was engaged in the

governmental function of making arrests. (Doc. # 17 at p. 4). The determination that an officer was acting within his or her discretionary authority is a "low hurdle" to clear. *Godby v. Montgomery Co. Bd. of Educ.*, 996 F.Supp. 1390, 1400 (M.D. Ala. 1998) (citing *Jordan v. Doe*, 38 F.3d 1559 (11th Cir. 1994)). Defendant Hill has cleared that hurdle.

### 2. **Defendant Hill had arguable probable cause to arrest Plaintiff.**

Having decided that Defendant Hill was acting within the scope of his discretionary authority, the next step in the inquiry is to determine whether Defendant Hill violated Plaintiff's constitutional rights by arresting her. It is axiomatic that warrantless arrests made without probable cause violate the Fourth Amendment's prohibition on unreasonable seizures. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Terry v. Ohio*, 392 U.S. 1, 16 (1968). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Floyd,* 281 F.3d 1346, 1348 (11th Cir.2002) (per curiam) (internal citations and quotation marks omitted). "[P]robable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts" and is determined based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

In the context of qualified immunity, however, it is not necessary that the officer had probable cause to make the arrest, but rather it is only necessary that he had *arguable* probable cause. *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). The inquiry thus focuses on whether or not the officer reasonably, although perhaps mistakenly, believed that probable cause existed. *Id.* The facts of the case and the elements of the crime dictate whether or not probable cause or arguable probable cause existed for the arrest. *Skop*, 485 F.3d at 1137-38.

Plaintiff argues that she had a right not to be arrested for taking photographs in public place. She cites *Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995) and *Childs v. DeKalb County*, 286 Fed.Appx. 687 (11th Cir. 2008) to establish that this right was clearly established at the time of her arrest. These cases, however, involve different fact situations. In *Williamson*, the plaintiff was arrested for taking pictures of undercover police officers at a festival. *Williamson*, 65 F.3d at 156. In *Childs*, the plaintiffs' car was followed and pulled over and they were arrested after having written down the tag number of an undercover officer's car. *Childs*, 286 Fed.Appx. at 689-90.

The facts alleged in this case are materially different. Although the *Williamson* case involves an arrest related to taking photographs, Plaintiff in this case was not just taking photographs in a public place. Plaintiff was at the scene of (and photographing) an ancillary arrest.

The case cited by Defendant Hill, *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003) is certainly more factually analogous to the situation before the court than those cited by Plaintiff. In *Durruthy*, the plaintiff, a freelance cameraman, was arrested for filming an arrest. As he was filming the arrest, he was told to get out of the street. He backpedaled to get out of the way, but continued filming. This occurred at a busy intersection the police were trying to keep clear during a situation of unrest. *Durruthy*, 351 F.3d at 1084-85. The Eleventh Circuit held that the officer had probable cause to arrest the plaintiff. *Id.* at 1089.

Of course, here, Defendant Hill is shielded by qualified immunity so long as he had arguable probable cause to arrest Plaintiff for *any offense*. *Durruthy*, 351 F.3d at 1089, n.6 (citing *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.")) (emphasis in original). "[S]ignificantly, probable cause is determined based on the "facts and

11

circumstances within the *officer's knowledge*." *Durruthy*, 351 F.3d at 1090 (citing *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (holding that the probable cause standard is met if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense.") (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)) (emphasis in original).[1]

"'For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law.'" *Crawford v. Carroll*, 529 F.3d 961, 977-78 (11th Cir. 2008) (quoting *Riley v. Newton*, 94 F.3d 632, 636 (11th Cir. 1996)). "Qualified immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." *Crawford*, 529 F.3d at 978-79. "Simply put, our case law makes clear that probable cause exists whenever an officer reasonably believes that an offense is being committed." *Durruthy*, 351 F.3d at 1089.

The court concludes on this record that a reasonable officer could conclude that Plaintiff was attempting to obstruct governmental operations (*i.e.*, the initial arrest) and was engaging in disorderly conduct.[2] After Defendant Hill instructed Plaintiff to move away from the scene, she moved toward

---

[1] Plaintiff's focus on her perception of the events which occurred prior to her arrest is misplaced. It is the *officer's* knowledge and understanding of the circumstances which guides the arguable probable cause analysis. *Hunter*, 502 U.S. at 228; *Durruthy*, 351 F.3d at 1090; *McCormick*, 333 F.3d at 1243; *Dahl*, 312 F.3d at 1233.

[2] Plaintiff argues strenuously that the court cannot take judicial notice of the arrest report regarding Plaintiff's arrest. To be clear, the court has not considered any of the factual matter contained therein. Rather, the court takes judicial notice of the report *solely* for the purpose of determining the offenses of which Defendant Hill believed Plaintiff to be guilty at the time of her arrest.

the service station office, but continued to photograph the ensuing arrest. (Doc. # 8 at ¶ 8). As Defendant Hill had at least *arguable* probable cause to arrest Plaintiff for the cited offenses, he is therefore entitled to qualified immunity. Because Defendant Hill is due qualified immunity, Plaintiff's federal claims against Defendant Hill are due to be dismissed.

## IV. Supplemental Jurisdiction Over State Law Claims

The court acknowledges that it has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(a). But it also has the discretion to decline to continue to exercise jurisdiction over those claims because all claims over which the court had original jurisdiction have now been dismissed. 28 U.S.C. § 1367(c)(3). Pursuant to section 1367(c), a district court has discretion to decline to exercise supplemental jurisdiction in four situations: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

Federal district courts routinely decide to decline to exercise supplemental jurisdiction after dismissing all federal claims upon which jurisdiction is based. The Eleventh Circuit has even "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Therefore, having dismissed all of Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Therefore, those claims are due to be remanded to the Circuit Court of Jefferson County, Alabama.

## V. Conclusion

Based on the foregoing, the court determines that the motions to dismiss of the City and Defendant Hill are due to be granted in part and denied in part. A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this ___24th___ day of August, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE